UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

AARON JEAN,                                                      No. 13-12072

                 Debtor(s).
_____/

Memorandum re Plan Confirmation and Motion to Dismiss
_____

      Chapter 13 debtor Aaron Jean is a volunteer firefighter at a station where creditor Michael Jablonowski is an assistant fire chief. In 2009, Jean purchased the real property at 5155 Cavedale Road, Glen Ellen, California, from Jablonownski for $500,000.00. The terms were $75,000.00 in cash and a note for the balance secured by a first position deed of trust.

      In early 2012, Jean and his father-in-law, Paul Bello, met with Jablonownski and his wife to discuss renegotiation of the note. Bello had loaned Jean the $75,000.00 down payment and Jean appears to have let Bello manage his personal financial affairs to a large extent. Jean had constructed a granny unit on the property where Bello sometimes lived. Jean did not obtain permits for the construction.

      Negotiations regarding modification of the note were cordial at first but became acrimonious as the parties were unable to reach agreement. Bello told Jablonownski that he should accept Jean's proposal because if he did not Jean would stop paying on the note, stop paying property taxes, and probably file bankruptcy after their foreclosure, delaying their repossession of the property further. He

1

also told them about the construction done without permits, which would increase their expenses when they finally regained possession.

The arguments Bello made to Jablonownski apparently backfired on Jean. Instead of agreeing to Jean's terms or exercising the power of sale under the deed of trust, Jablonownski and his wife commenced an action in state court to foreclose judicially. In addition to possession, they sought damages for alleged waste due to Jean's failure to pay property taxes and construction of the granny unit without permits.

After a five-day jury trial, the jury awarded $44,263.37 in damages against Jean for failure to pay the property taxes and construction of the granny unit. Jablonownski's motion for about $129,000.00 in attorneys' fees and costs had been tentatively granted when Jean filed his Chapter 13 petition on November 12, 2013.

Jean has filed a Chapter 13 plan requiring him to surrender the property to the Jablonownskis and pay $500.00 per month to the Chapter 13 trustee for 60 months, the maximum term allowed by the Bankruptcy Code. The proposed payments are actually somewhat higher than his disposable income, requiring him to either tighten his belt significantly or obtain help from Bello. The Chapter 13 trustee has recommended confirmation, advising the court that the plan appears to meet all of the requirements of § 1325(a) of the Code. Jablonownski and his wife object and seek dismissal of the case, arguing only that Jean filed the Chapter 13 and proposed the plan in bad faith, so that the requirement of § 1325(a)(3) is lacking.

The first ground urged by the Jablonownskis as "bad faith" is that Jean scheduled their debt at $44,263.37 instead of the total with attorneys' fees and costs of $173,648.94. However, the Jablonownskis were in no way prejudiced by this. Pursuant to § 502(a), their claim is deemed allowed as filed; a final order of the state court is not necessary. Even if it were, the Jablonownskis could have easily obtained leave from this court to have the order entered.

The Jablonownskis' second ground for arguing bad faith is that their jury award for damages is nondischargeable. This position is wrong on several levels.

First, it is dubious that the award is nondischargeable under any chapter of the Bankruptcy Code. The obligation to pay property taxes is contractual; even the most willful breach of contract does not usually result in a nondischargeable debt. *In re Jercich,* 238 F.3d 1202, 1206 (9th Cir. 2001). And building a granny unit without permits probably does not meet the maliciousness requirement of *Kawaahau v. Geiger,* 523 U.S. 57, 64 (1998).

Second, even willful and malicious damage to property is dischargeable in Chapter 13. Congress intentionally limited nondischargeability for willful and malicious conduct to personal injury by § 1328(a)(4).

Third, a nondischargeable debt does not necessarily render a Chapter 13 plan unconfirmable. Nondischargeability of a debt is but one of numerous factors a court takes into account in considering a Chapter 13 plan. If the payments proposed by Jean were nominal and designed for him to easily escape the consequences of his actions, the court might agree with the Jablonownskis. However, the payments Jean proposes are substantial, and he proposes to make them for the maximum time the Bankruptcy Code permits. Even if the court were convinced that the Jablonownskis have a nondischargeable claim against Jean, the size and length of the payments negates any conclusion that Jean's plan is proposed in bad faith.

The Jablonownskis' last argument is based on a misapplication of case law. Relying on *In re Leavitt,* 171 F.3d 1219, 1224 (9th Cir. 1999), they argue that the court should find bad faith because Jean filed "only to defeat state court litigation."

In order to argue based on *Leavitt,* the Jablonownskis first disregard the clear statement in that case that a finding of bad faith is based on the totality of the circumstances, not one test. They next disregard the word "only" as if it were not there. They then completely disregard the facts of that case, which are entirely different from those shown here.

In *Leavitt,* the Court of Appeals affirmed the bankruptcy court's dismissal of a case with prejudice for bad faith because the debtor intentionally concealed and undervalued assets and filed a plan which proposed to pay zero on a state court judgment. The debtor had filed at least four cases

3

trying to do the same thing. His proposed payment under his plan were $100 per month. The Court found that dismissal for bad faith was well within the bankruptcy court's discretion.

The Court in *Leavitt* cited *In re Eisen,* 14 F.3d 469, 470 (9th Cir. 1994) and *In re Chinichian,* 784 F.2d 1440, 1445-46 (9th Cir.1986) to support its point that filing a Chapter 13 petition only to thwart state court litigation can be a factor in finding bad faith. Neither case supports the Jablonownskis' position. In *Chinichian* the purpose of the multiple filings was to frustrate a litigant from enforcing a judgment for specific performance. In *Eisen* the purpose of the multiple filings was to thwart enforcement of a state court judgment. Jean has not filed multiple petitions. His plan calls for surrender of the property as required by the state court and payment of as much of the Jablonownskis' judgment as he can. Confirmation of his plan is in no way inconsistent with *Leavitt*, *Eisen* or *Chinichian*.

In this case, the purpose of the plan is to deal with the Jablonownskis' judgment, not avoid it. The payments are substantial and the plan meets all the requirements of law. There is no suggestion of any concealment of any assets or any other wrongful conduct. It is not *per se* bad faith, as the Jablonownskis seem to argue, to file a Chapter 13 petition after losing a state court lawsuit.

For the foregoing reasons, the Jablonownskis' motion to dismiss will be denied, their objection to the plan will be overruled, and the plan will be confirmed. Counsel for Jean shall submit an appropriate form of order.

Dated: March 31, 2014

Alan Jaroslovsky
Chief Bankruptcy Judge

4