**Entered on Docket**
**November 21, 2014**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

FILED

NOV 21 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   NC-14-1198-KuPaJu |
| ) | |
| AARON JEAN, ) | Bk. No.   13-12072 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| MICHAEL JABLONOWSKI; ) | |
| CATHERINE DALE-JABLONOWSKI, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| AARON JEAN, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on October 23, 2014
at San Francisco, California

Filed – November 21, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Chief Bankruptcy Judge, Presiding

_____

Appearances:     Peter Goldstone argued for appellants Michael
                 Jablonowski and Catherine Dale-Jablonowski; Brian
                 Anthony Barboza argued for appellee Aaron Jean.

_____

Before: KURTZ, PAPPAS and JURY, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

## INTRODUCTION

Michael Jablonowski and Catherine Dale-Jablonowski are judgment creditors of the debtor, Aaron Jean. They challenged Jean's chapter 13[1] bankruptcy petition and his proposed plan, claiming that both the petition and the plan were filed in bad faith. After an evidentiary hearing, the bankruptcy court found, based on the totality of the circumstances, that Jean's petition and plan were both filed in good faith. Accordingly, the court denied the Jablonowskis' motion to dismiss Jean's case and overruled their objection to his plan.

On appeal, the Jablonowskis attempt to characterize their issues with the bankruptcy court's rulings in a number of different ways. However, at bottom, the Jablonowskis' appeal is nothing more than their disagreement with the bankruptcy court's good faith findings. Because those findings are not clearly erroneous, we AFFIRM.

## FACTS

In 2007, Jean purchased from the Jablonowskis a parcel of residential real property located on Cavedale Road in Glen Ellen, California, for $500,000. Jean paid $75,000 in cash and financed the balance by executing a $425,000 note in favor of the Jablonowskis. The note was secured by a first trust deed against the property.

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

In 2011 and early 2012, Jean and the Jablonowskis engaged in negotiations for the potential payoff or restructuring of the loan. During those negotiations, Jean's father-in-law Paul Belo sometimes negotiated on Jean's behalf. The parties' testimony regarding these negotiations differed significantly. The Jablonowskis testified that both Jean and Belo threatened that Jean would file bankruptcy if the Jablonowskis did not agree to the restructuring or payoff terms that Jean and Belo were proposing. For his part, Jean denied that he ever threatened to file bankruptcy. Belo did not testify in the bankruptcy court proceedings, but the record does include a letter that Belo sent the Jablonowskis during the course of negotiations in which Belo pointed out that, if the negotiations turned out to be unsuccessful, Jean likely would commence a bankruptcy case, which would increase the time and expense for the Jablonowskis to recover the property.

According to the Jablonowskis, both Belo and Jean also threatened to "remove fixtures, plumbing, copper wiring, drywall, and cabinetry from the improvements" on the property. The Jablonowskis further claimed that Jean "self-reported" to county officials certain unpermitted improvements he made to the property essentially to punish the Jablonowskis for refusing to accept his debt restructuring or payoff proposals.

At some point, Jean stopped making his mortgage payments and negotiations between the parties broke down. The Jablonowskis thereafter filed a lawsuit in the Sonoma County Superior Court (Case No. SCV-251584) for breach of the promissory note, for judicial foreclosure, and for waste of the real property

3

collateral securing the loan.  The parties stipulated to a
judgment entitling the Jablonowskis to foreclose, but the waste
cause of action only was resolved by judgment after a jury trial.
The jury found that Jean was liable for bad faith waste on two
separate grounds.  First, the jury found that Jean committed bad
faith waste in the amount of $9,263.37 by failing to pay real
property taxes on the property even though he had the financial
means to do so.  And second, the jury found that Jean also
committed bad faith waste by making unpermitted improvements to
the property, which diminished the property's value by $35,000.
Based on the jury's findings that Jean had committed bad faith
waste, the state court entered judgment in favor of the
Jablonowskis and against Jean for $44,263.37 on the waste cause
of action.

     The Jablonowskis then sought to recover their fees and costs
of roughly $130,000.  After the state court issued a tentative
ruling indicating that it would grant the Jablonowskis' request
for fees and costs but before entry of a final order granting the
request, Jean commenced his chapter 13 bankruptcy case.

     In response to Jean's petition filing and his proposed
chapter 13 plan, the Jablonowskis filed both an objection to
Jean's plan and a motion to dismiss his bankruptcy case.  The
Jablonowskis contended that the bankruptcy petition was filed in
bad faith and that the plan was not proposed in good faith.  In
support of these contentions, the Jablonowskis relied in part on
Jean's pre-bankruptcy conduct, particularly the state court
findings of bad faith waste and the threats to file bankruptcy
Jean allegedly had made.

4

The Jablonowskis further claimed that Jean intentionally filed inaccurate schedules, omitting the $130,000 owed to their counsel for fees and costs and including $75,000 allegedly owed to Belo, which the Jablonowskis asserted was actually a gift. The Jablonowskis acknowledged that Jean listed their counsel as a creditor but pointed out that Jean scheduled their counsel's fees and costs claim in the amount of "$0.00" and listed the claim as contingent, disputed and unliquidated even though Jean had done nothing to challenge the fees and costs claim in the state court, which had issued a tentative ruling indicating that it was prepared to grant in full the request for fees and costs.

The Jablonowskis also took issue with Jean's valuation of the real property subject to the foreclosure proceedings. The Jablonowskis argued that Jean in his Schedule A undervalued his "current interest" in the property at $0 because the property had not yet actually been foreclosed upon. The Jablonowskis additionally argued that Jean overvalued the property in his Schedule D at $350,000 given that the Jablonowskis' appraiser had testified during the state court trial that the property only was worth $270,000.

The Jablonowskis presented as their most compelling argument their claim that Jean filed the petition to "defeat" their state court litigation. To support this claim, they pointed out that Jean commenced his bankruptcy case just before the state court finalized its award of fees and costs. They also pointed out that, aside from the $75,000 "phantom" debt owed to Belo and the debts owed to the Jablonowskis and their counsel, Jean's debts were relatively minimal and his creditors were few. The

5

Jablonowskis further posited that, in a chapter 7 case, the judgment debt for bad faith waste would be nondischargeable under § 523(a)(6) as a debt arising from a willful and malicious injury. Finally, they opined that Jean's proposed plan payments to unsecured creditors of $500 per month for sixty months were unrealistic, given that Jean had calculated his disposable income as $371.73 per month.

In response to the Jablonowskis' allegations of bad faith, Jean declared that he never intended to harm the Jablonowskis by not paying the real property taxes or by making unpermitted improvements to the property. He further claimed that his schedules were accurate and complete, and that he believed that his proposed plan payments of $500 per month for five years were feasible if he remained frugal and organized over that time period. He also denied that the $75,000 loan from Belo was spurious. Finally, Jean disputed the notion that he filed the petition in order to avoid the consequences of the Jablonowskis' state court litigation. Rather, Jean insisted, he filed his chapter 13 bankruptcy case because he did not have the means to pay all of his debts and because, given his age and financial condition, he would never be able to pay his debts in full.

After an evidentiary hearing, the bankruptcy court ruled against the Jablonowskis on both their plan objection and on their motion to dismiss. The court apparently accepted as true most of the Jablonowskis' account of Jean's pre-bankruptcy conduct regarding the property, the loan restructuring

6

negotiations, and the state court lawsuit.[2]  Nonetheless, the

court determined that these pre-bankruptcy events carried

relatively little weight in considering whether Jean's petition

and chapter 13 plan were filed in good faith.  The court also

indicated that there were no material inaccuracies or omissions

in Jean's bankruptcy schedules.

What the court considered most critical in assessing Jean's

good faith was Jean's proposal to make plan payments of $500 per

month for sixty months.  The court found that the proposed plan

payments were substantial and represented a significant recovery

for Jean's creditors.  The court further indicated that, while

the proposed monthly payments exceeded his disposable income, the

payment amount was still feasible and reflected an earnest

attempt by Jean to pay his creditors as much as his finances and

the chapter 13 process permitted.

Rather than abusing the bankruptcy process by using it to

avoid the consequences of the state court litigation, the court

concluded that Jean was properly using his chapter 13 case to pay

as much as he could to his creditors, including the Jablonowskis,

for the maximum period of time permitted for a chapter 13 plan.

The bankruptcy court entered orders on April 3, 2014,

denying the Jablonowskis' motion to dismiss and confirming Jean's

plan, and the Jablonowskis timely appealed.

---

[2]The bankruptcy court did not find that Jean personally
threatened to file for bankruptcy relief.  Instead, the court
seemed to accept Jean's testimony that any comments regarding his
potential bankruptcy filing were attributable to others.  In
addition, the court referred to the $75,000 that Belo gave Jean
for the down payment on the real property as a loan rather than a
gift.

7

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.
§§ 1334 and 157(b)(2)(A) and (L).  We have jurisdiction under
28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err when it confirmed Jean's
chapter 13 plan and denied the Jablonowskis' dismissal motion?

**STANDARDS OF REVIEW**

We review the bankruptcy court's order denying the
Jablonowskis' dismissal motion for an abuse of discretion.  See
Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth),
455 B.R. 904, 914 (9th Cir. BAP 2011).

We also review for an abuse of discretion the bankruptcy
court's order confirming Jean's chapter 13 plan.  See de la Salle
v. U.S. Bank, N.A. (In re de la Salle), 461 B.R. 593, 601 (9th
Cir. BAP 2011).

In considering whether the bankruptcy court abused its
discretion, we first determine de novo whether the bankruptcy
court "identified the correct legal rule to apply to the relief
requested."  United States v. Hinkson, 585 F.3d 1247, 1261–62
(9th Cir.2009) (en banc).  And if it did, we next determine
whether the bankruptcy court's factual findings were illogical,
implausible or "without support in inferences that may be drawn
from the facts in the record."  Id. at 1262.

To the extent the bankruptcy court's rulings turned on its
assessment of Jean's good faith, we review that assessment under
the clearly erroneous standard.  In re de la Salle, 461 B.R. at
601; In re Ellsworth, 455 B.R. at 914.  The bankruptcy court's

8

factual findings are not clearly erroneous unless they are "illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

**DISCUSSION**

A chapter 13 petition which is filed in bad faith may constitute "cause" for dismissal under § 1307(c). See Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999); Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994) (per curiam). "To determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith." In re Eisen, 14 F.3d at 470. In making both determinations, a bankruptcy court needs to review the "totality of the circumstances." Id.

In In re Leavitt, the Ninth Circuit held that, when considering whether a chapter 13 case should be dismissed because it was filed in bad faith, the bankruptcy court should consider, among other factors:

> (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his chapter 13 petition or plan in an inequitable manner;
> (2) the debtor's history of filings and dismissals;
> (3) whether the debtor intended to defeat state court litigation; and
> (4) whether egregious behavior is present.

In re Leavitt, 171 F.3d at 1224 (citations and internal quotation marks omitted).[3]

---

[3]The record reflects that the bankruptcy court placed the burden of proof on Jean to demonstrate his good faith for purposes of both plan confirmation and the Jablonowskis' dismissal motion. In In re Ellsworth, we acknowledged that the
(continued...)

9

The Jablonowskis claim that the bankruptcy court did not properly apply In re Leavitt's totality of the circumstances test. We disagree. In denying the Jablonowskis' dismissal motion and in confirming Jean's plan, the bankruptcy court considered all relevant factors as presented by the parties. It weighed the evidence presented and inferred from the totality of the circumstances that Jean's bankruptcy petition and plan were filed in good faith. It is implicit in the court's written decision, and in the comments it made during the evidentiary hearing, that the court found no material omissions or misrepresentations in Jean's filings, no unfair manipulation of the Code, no inequity in Jean's petition or plan, and no egregious behavior. Nor did Jean have a history of prior bankruptcy filings or dismissals.

As for the relationship between Jean's petition filing and the state court litigation, the bankruptcy court inferred from the entirety of the circumstances that Jean did not file for bankruptcy relief to "defeat" the state court litigation. Instead, the court found that Jean's chapter 13 petition and plan

---

³(...continued)
debtor bore the burden of proof on the good faith issue for plan confirmation purposes, but we questioned (without deciding the issue) whether for purposes of a case dismissal motion the movant or the debtor should bear the burden of proof regarding good faith. See In re Ellsworth, 455 B.R. at 918-919. In any event, because the bankruptcy court held that Jean bore the burden and had met this burden, any error by the court in placing the burden of proof on Jean as the debtor would not aid the Jablonowskis' case for reversal on appeal. In other words, for purposes of this appeal, any error regarding the burden of proof was harmless, and we must ignore harmless error. Van Zandt v. Mbunda (In re Mbunda), 484 B.R. 344, 355 (9th Cir. BAP 2012).

10

constituted an earnest and good-faith attempt to deal with the
judgment debt resulting from the state court litigation.  The
court found particularly persuasive that Jean had proposed to
make plan payments of $500 per month – more than the amount of
his disposable income – for sixty months (the maximum time period
permitted for a chapter 13 plan).  In the parlance of In re Retz
and Hinkson, we cannot say that the bankruptcy court's inferences
or its findings were illogical, implausible or without support in
the record.  Consequently, we have no basis to overturn these
inferences and findings.

The Jablonowskis further contend that the bankruptcy court
disregarded the evidence they presented, which they believe was
sufficient to support a finding that Jean filed his petition and
plan in order to defeat the Jablonowskis' state court litigation.
The record reflects that the court did not ignore the
Jablonowskis' evidence, but rather chose to give it little
weight.  The court found Jean's evidence more persuasive and
ultimately chose to credit Jean's account of his reasons for
filing his petition and plan over the account offered by the
Jablonowskis.  The bankruptcy court's choice between these two
accounts does not constitute reversible error.  As the Supreme
Court aptly put it: "[w]here there are two permissible views of
the evidence, the fact finder's choice between them cannot be
clearly erroneous."  Anderson v. City of Bessemer City, N.C.,
470 U.S. 564, 574 (1985).

The Jablonowskis' remaining arguments on appeal hinge on
their assertion that the judgment debt Jean owed them would be
nondischargeable in a chapter 7 bankruptcy case.  The

11

1  Jablonowskis contend that the judgment against Jean for bad faith

2  waste qualifies as a nondischargeable debt under § 523(a)(6).

3  That section excepts from discharge debts arising from willful

4  and malicious injuries.  We are skeptical that the Jablonowskis'

5  contention is correct.  The elements necessary to establish bad

6  faith waste are insufficient by themselves to support a

7  nondischargeability claim under § 523(a)(6).  Section 523(a)(6)

8  requires a very specific mental state on the part of the debtor –

9  intent to injure or actual knowledge that injury is substantially

10 certain to occur.  See Kawaauhau v. Geiger, 523 U.S. 57, 61-62

11 (1998); Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208

12 (9th Cir. 2001).  In contrast, a cause of action for bad faith

13 waste does not require any particular state of mind.  See Fait v.

14 New Faze Dev., Inc., 207 Cal.App.4th 284, 299 (2012) (holding

15 that bad faith waste occurs "whenever the owner's impairment of

16 the value of the security is not caused by the economic pressures

17 of a market depression, whether the owner acts recklessly,

18 intentionally, maliciously, or with some other mental state.").

19     Moreover, it is clear from the record that the state court

20 jury verdict did not include any findings regarding Jean's mental

21 state.  Thus, the Jablonowskis' assertion that the judgment debt

22 would be nondischargeable under § 523(a)(6) is entirely

23 speculative, and hence it offers little or no support for their

24 claim that Jean filed his chapter 13 petition and plan in bad

25 faith.

26     Even if the judgment debt would be nondischargeable in a

27 chapter 7 case, Jean's attempt to discharge that debt in a

28 chapter 13 case does not, by itself, constitute bad faith.  See

12

Nelson v. Meyer (In re Nelson), 343 B.R. 671, 677 & n.10 (9th

Cir. BAP 2006).   To the contrary, the Code expressly provides for

a broader discharge in chapter 13, including some debts that

would be nondischargeable in a chapter 7 case.   Compare § 523(a)

with 1328(a).   Therefore, it makes little sense for the

Jablonowskis to complain, as they do, that Jean should not be

permitted to use chapter 13 to obtain this broader discharge, as

Congress clearly contemplated.   As one leading treatise explains:

> The Code invites debtors to use Chapter 13 to manage
> the effects of prepetition misconduct.   Chapter 13
> allows an eligible individual to discharge . . . debts
> that would be nondischargeable in a Chapter 7 case.
> That Chapter 13 debtors propose to compromise claims
> that would be nondischargeable in a Chapter 7 case is
> consistent with the statutory scheme and demonstrates
> that counsel has done what Congress contemplated –
> informed the debtor of the advantages of Chapter 13.
>
> *    *    *
>
> § 1328(a) unambiguously permits Chapter 13 debtors to
> discharge claims that would be nondischargeable in a
> Chapter 7 case.   The design of the Code supports the
> argument that the management and discharge of claims
> that would be nondischargeable in a Chapter 7 case is
> mainstream Chapter 13 practice – a use of Chapter 13
> consistent with congressional intent and not bounded
> any more or less than other uses by the good-faith test
> for confirmation.

Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, at

§ 183.1[1], [2] (4th Ed. June 15, 2004).

In short, we decline the Jablonowskis' invitation to reverse

the bankruptcy court for permitting Jean to do in his chapter 13

case that which Congress explicitly entitled him to do.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy

court's orders confirming Jean's chapter 13 plan and denying the

Jablonowskis' dismissal motion.

13